**G. WARREN BLEEKER, CA Bar No. 210834**
warren.bleeker@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
**655 N. Central Ave., Suite 2300**
**Glendale, CA 91203-1445**
**T: (626) 795-9900**
**F: (626) 577-8800**

*Attorneys for Plaintiff*
*American Petroleum Institute*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, a Washington, D.C. Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOES 1-10,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT (REPRODUCTION) [17 U.S.C. § 101 et seq.];**<br><br>**(2) COPYRIGHT INFRINGEMENT (DISTRIBUTION) [17 U.S.C. § 101 et seq.];**<br><br>**(3) TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]; and**<br><br>**(4) UNFAIR COMPETITION [15 U.S.C. § 1125(a)]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff American Petroleum Institute ("API") files this Complaint for copyright and trademark infringement against unidentified John Does 1-10 ("Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for copyright infringement brought under the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.* and for trademark infringement brought under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

2. API brings this action because Defendants, individually and in association with each other and/or third parties, have willfully infringed API's copyrights and trademarks by creating fraudulent websites to sell API's copyright-protected standards without authorization.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) – (b) because this action arises under the Copyright Laws of the United States, including 17 U.S.C. § 101 *et seq*., and under the Lanham Act, including 15 U.S.C. § 1051 *et seq.*

4. This Court has personal jurisdiction over the Defendants because they do business in this District and committed the acts API complains about here in this District.

5. API's claims arise in whole or in part in this District and Defendants operate and/or transact business in this District. Further, upon information and belief, one or more of the Defendants are non-citizens and non-residents of the United States. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(3) – (c)(3) and 1400(a).

## PARTIES

6. API is a domestic, non-profit corporation registered to do business in the District of Columbia, with a principal place of business at 200 Massachusetts Avenue NW, Suite 1100, Washington, D.C. 20001-5571.

7. Defendants are various actors responsible for systematic reproduction, copying, and sale of API's copyrighted works through various fraudulent websites that purport to be official API websites (the "Counterfeit Websites"). The identities of the Defendants are currently unknown to API. On information and belief, however, Defendants are present and doing business in this District by offering for unauthorized copies of API's standards via one or more websites.

**API AND ITS COPYRIGHTED AND**
**TRADEMARK PROTECTED WORKS**

8. API is the leading trade association for the petroleum and natural gas industry in the United States. API was established to afford a means of cooperation between the industry and the government in all matters of national concern, foster foreign and domestic trade in American petroleum products, promote the interests of the petroleum industry, and promote the improvement of its members and the study of the arts and sciences connected with the oil and gas industry.

9. Since 1924, API has been a cornerstone in establishing and maintaining standards for the worldwide oil and natural gas industry. API's standards incorporate industry practices to protect workers' safety and the environment, help the industry provide superior products and services, protect energy consumers, and promote the global acceptance of American products and services.

10. API develops and publishes standards, specifications, and recommended practices to assist businesses in the use of safe, interchangeable parts, the production of quality products, and the adoption of safe-operations practices in the petroleum and natural gas industry. Each API standard, specification, technical reports, and recommended practice is published in a booklet that prominently bears the API mark ("API's Standards"). Currently, API has published more than 800 different standards, specifications, technical reports, and recommended practices, relating to all facets of the petroleum and natural gas industry, including, but not

limited to: (a) upstream industries (petroleum exploration and production); (b) downstream industries (petroleum refining and processing); (c) petroleum pipelines; (d) marine transportation; and (d) natural gas operations.

11. API's Standards and recommended practices are well known in the petroleum industry and are often adopted by or incorporated into federal regulations applicable to the petroleum industry.

12. API operates a web site located at www.api.org, which provides information about its publications as well as its various standards, specifications, and recommended practices. API has operated the www.api.org website since early 1995.

13. Authorized copies of API's Standards are available in hard copy form (a "Print Edition") and as write-protected PDF files available for single-user download. The write-protected PDF files may not be electronically duplicated or transferred to another user, and print rights are limited to one printed copy. They are not available as unlocked, non-write protected PDF files, as they are offered on some of the infringing websites. API Standards are offered only through API's own webstore and through the following authorized distributors: Accuris, SAI Global (k/n/a Intertek Inform), ASTM, BSB Edge Private Limited (India), DIN Media GmbH (Germany), Afnor Editions (France), Brazilian Association of Technical Standards (ABNT) (Brazil), Abendi (Brazil), Royal Netherlands Standardization Institute (NEN) (Netherlands), KazStandards (Kazakstan), Research Institute of Petroleum Exploration & Development Co., Ltd. China National Petroleum Corporation (China), Nimonik (Canada), and Sky Bear Technical Standards, Inc. (Canada).[1]

[1] API maintains a list of authorized distributors at: https://www.api.org/products-and-services/standards/purchase#tab-authorized-standards-distributors (last visited September 24, 2026).

14. API also provides customizable subscriptions to customers who require broader access to standards. No subscription provides the right to distribute, sell, or reproduce API's Standards. All subscriptions are limited to the subscribing party. On information and belief, none of the Defendants in this case have a valid subscription.

15. Sales of API's Standards provide significant revenue to API which it uses to offset the direct development costs. API charges for copies of API Standards depending on the content and size of the API Standard. Documents are priced by individual copy according to their length, ranging between less than hundred to a few thousand dollars. Because API's Standards are designed to be used together, a company or organization purchasing API's Standards will often purchase a subscription granting its employees the right to use a suite of constantly updated standards at once in a customizable subscription, with a single sale totaling thousands of dollars. In 2025, API's sales of authorized copies of API's Standards totaled tens of millions of dollars in sales. The sales of authorized copies of API's Standards are a significant source of revenue for API.

16. Sales revenues from API's Standards support ongoing standards development. API is a nonprofit organization that incurs tens of millions of dollars in costs annually in supporting more than 2,000 committees and work groups in the initial development and continuous improvement of API's more than 800 active standards, as well as hundreds of additional publications. API's ANSI-accredited procedures for written policies on standards development, the *API Procedures for Standards Development,* require API to review each standard every five years. API supports more than 10,000 industry experts working on various API committees, as well as funding millions of dollars' worth of vital technical research to ensure the standards reflect the best available technology and most up to date practices. API relies on revenue generated by the commercial distribution of API's Standards to finance these activities.

17. API owns the copyrights and trademarks for API's Standards and has registered the API Standards with the U.S. Copyright Office and U.S. Patent and Trademark Office. A non-exhaustive list of copyright- and trademark-protected API Standards that are the subject of this proceeding are attached here as **Exhibit A**.

18. Each API's Standard, including those listed in **Exhibit A** to this Complaint, is API's original work of authorship and constitutes copyrightable subject matter under the copyright laws of the United States. The infringed works in **Exhibit A** are protected by Certificates of Registration issued by the United States Copyright Office. The registration certificates for the infringed works are attached here as **Exhibit B** and constitute prima facie evidence of the validity of the copyright.

19. API is the owner of numerous trademarks registered with the U.S. Patent and Trademark Office pursuant to 15 U.S.C. §§ 1051 and 1052. The API marks ("API Marks") consist of, at the least, "AMERICAN PETROLEUM INSTITUTE," "API," the Energy API Logo, and the API Logo. *See, e.g.*, U.S. Trademark Registration Nos. 3,617,681; 6,412,351; 6,494,235; 6,479,885; and 7,218,749 (attached hereto as **Exhibit C** (group exhibit)).

**DEFENDANTS' INFRINGING ACTIVTIES**

20. Despite not being Authorized Distributors of API's Standards, Defendants have copied, displayed, and made available for sale on Defendants' Counterfeit Websites, hundreds of unauthorized copies of API's Standards, including the works listed in **Exhibit A**.

21. Defendants' Counterfeit Websites are made to look like an authentic API website, using API's trademarks and employing color schemes and general layout that mimics API's webstore. An example of one of the Counterfeit Websites is shown below:




Document title: API Standards - American Petroleum Institute
Capture URL: https://apistoreonline.com/
Capture timestamp (UTC): Wed, 24 Jun 2026 21:13:14 GMT

Page 1 of 6

22. An example of API's webstore is shown below:




23. As can be readily seen, the Counterfeit Websites use API's registered trademark in the upper left-hand corner on a blue banner with multiple menu options arranged on the upper right-hand of the ribbon. The Counterfeit Websites show previews or "thumbnails" of API standards that also display multiple API registered trademarks, such as:

U.S. Reg. No. 6,494,235

U.S. Reg. No. 3,617,681

24. API has discovered the same or similar content at multiple domains, including but not limited to:

(i) <apistoreonline.com>

(ii) <apistandardstore.com>

(iii) <apistandardsonline.com>

(iv) <apistandards.us>

(v) <apistandardscollection.com>

(vi) <apistandardscode.com>

(vii) <apilibary.com>

(viii) <standardsdistribution.com>

25. API submitted take-down/abuse requests to the registrars and hosting agents for these and other Counterfeit Websites. As the Counterfeit Websites were being taken down, Defendants created new Counterfeit Websites.

26. During API's investigation of the Counterfeit Websites, API made several purchases of API's standards and API's agent received PDF versions of API's standards. API was able to determine that certain of the Counterfeit Websites possessed banking information tied to the following banks and payment processors:

(i) Wells Fargo;

(ii) Stripe;

(iii) Google; and

(iv) DBS Bank

27. As noted in Paragraph 13 above, PDF versions of API's standards are only available for purchase through API or API's Authorized Distributors. These PDF files may not be electronically duplicated or transferred to another user. Therefore, any PDF versions of API's Standards posted, circulated, or otherwise copied by the Defendants on Counterfeit Websites are unauthorized, infringing copies.

28. On information and belief, the market sale price for the copies of API's Standards that the Defendants have posted, circulated, displayed, or otherwise copied on the Counterfeit Websites is significant. A conservative estimate puts the value of the illegally posted, circulated, otherwise copied, and offered for sale API Standards at over $1,000,000, which is all lost revenue to API.

29. API has taken every effort to take-down or obtain ownership of the Counterfeit Domains. As mentioned, this has included submitting multiple take-down/abuse reports with the multiple registrars and hosting agents used by Defendants. In addition, API has filed a total of three UDRP complaints and, to date, Defendants have not responded thereby allowing transfer of the domains used by Defendants. However, Defendants simply register new domains and use those domains to post the content from the Counterfeit Websites. In each of the UDRP proceedings, Defendants used fraudulent information when registering the domains, so API has not been provided any identifying information about the Defendants.

30. As part of the test purchases made by API's agent, certain banking information was obtained and, upon information and belief, that banking information may lead to the true identity of the Defendants.

31. Unless enjoined by this Court, Defendants will continue their course of wrongful conduct and to continue to reproduce, distribute, publicly display, infringe upon, and otherwise profit from API's Standards. As a direct and proximate result of Defendants' wrongful acts, API has already suffered irreparable injury and monetary damages in an undetermined amount.

32. API has no adequate injury at law.

**COUNT I - DIRECT WILLFUL COPYRIGHT INFRINGEMENT – REPRODUCTION**

**17 U.S.C. § 101 *et seq.***

33. API incorporates by reference the allegations contained in Paragraphs 1 – 32 as if fully stated here and further alleges:

34. API's Standards are original works of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq*.

35. API's Standards were subject to copyright protection under 17 U.S.C. § 102(a) when they were fixed by API in a tangible format. This ownership is reflected in API's registrations with the U.S. Copyright Office pursuant to 17 U.S.C. §§ 408 and 409.

36. API owns all right, title, and interest, including copyright to API's Standards and has the authority to enforce all such rights, including copyright.

37. API owns copyright registrations covering API's Standards including those, for example, listed in Paragraph 18 of this Complaint.

38. API's copyright registrations for the API's Standards predate Defendants' infringing activity.

39. Defendants had access to API's Standards.

40. Defendants never sought nor obtained API's permission to display, distribute, or reproduce API's Standards.

41. Without authority or permission, Defendants displayed, distributed, reproduced, and sold API's Standards and continue to reproduce and offer for sale API's Standards without API's permission.

42. By the above-alleged actions, Defendants, individually or jointly, have infringed and will continue to infringe API's copyrights in and relating to API's Standards by reproducing, without API's authorization, API's Standards, in violation of 17 U.S.C. §§ 106(1) and 501.

43. The actions of Defendants described above have been willful and/or knowing at all times relevant to this action.

44. As a direct and proximate result of Defendants' infringement of API's copyrights, API is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c). Alternatively, at API's election, pursuant to 17 U.S.C. § 504(b), API shall be entitled to its actual damages plus Defendants' profits from infringement in an

amount to be proven at trial. API is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

45. API has no adequate remedy at law. Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to API. As a result of Defendants' wrongful conduct, API is entitled to injunctive relief and damages.

**COUNT II - DIRECT WILLFUL COPYRIGHT INFRINGEMENT –**

**DISTRIBUTION**

**17 U.S.C. § 101 *et seq.***

46. API incorporates by reference the allegations contained in Paragraphs 1 – 32 as if fully stated here and further alleges:

47. The API Standards are original works of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq*.

48. The API Standards were subject to copyright protection under 17 U.S.C. § 102(a) when it was fixed by API in a tangible format and is registered with the U.S. Copyright Office pursuant to 17 U.S.C. §§ 408 and 409.

49. API owns all right, title, and interest, including copyright to the API Standards and has the authority to enforce all such rights, including copyright.

50. API owns copyright registrations covering the API Standards including those, for example, listed in **Exhibit A** of this Complaint.

51. API's copyright registrations for the API Standards predate Defendants' infringing activities.

52. Defendants had access to the API Standards.

53. Defendants never sought nor obtained API's permission to publicly distribute the API Standards.

54. Without authority or permission, Defendants reproduced the API Standards, and continue to offer for sale the API Standards, without API's permission.

55. By the actions alleged above, Defendants, individually or jointly, have infringed and will continue to infringe API's copyrights in, and relating to, API's Standards by publicly distributing, without API's authorization, API's Standards in violation of 17 U.S.C. §§ 106(3) and 501.

56. The actions of Defendants described above have been willful and/or knowing at all times relevant to this action.

57. As a direct and proximate result of Defendants' infringement of API's copyrights, API is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c). Alternatively, at API's election, pursuant to 17 U.S.C. § 504(b), API shall be entitled to its actual damages plus Defendants' profits from infringement in an amount to be proven at trial. API is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

58. API has no adequate remedy at law. Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to API. As a result of Defendants' wrongful conduct, API is entitled to injunctive relief and damages.

**COUNT III – TRADEMARK INFRINGEMENT**

**15 U.S.C. § 1114**

59. API incorporates by reference the allegations contained in Paragraphs 1–32 as if fully stated here and further alleges:

60. Defendants' unauthorized use of the API Marks in commerce as alleged herein is likely to deceive consumers as to the origin, source, or sponsorship, or affiliation of the API standards being sold by Defendants, and is likely to cause consumers to believe, contrary to fact, that the Counterfeit Websites are authorized to sell API standards, or that the Counterfeit Websites are in some way affiliated with or sponsored by API. Defendants' conduct, therefore, constitutes infringement of violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61. Defendants' conduct is causing immediate and irreparable harm and injury to API, and to its goodwill and reputation, and will continue to both damage

API and confuse the public unless enjoined by this Court. API has no adequate remedy at law.

62. API is entitled to, among other relief, injunctive relief and an award of actual or statutory damages, Defendants' profits, enhanced damages and profits, reasonably attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT IV – UNFAIR COMPETETITON**

**<u>15 U.S.C. § 1125(a)</u>**

63. API incorporates by reference the allegations contained in Paragraphs 1–32 as if fully stated here and further alleges:

64. API's Standards are original works of authorship and bear API's trademarks, which are subject to trademark protection under 15 U.S.C. § 1125 *et seq*.

65. API's Standards were subject to trademark protection under 15 U.S.C. § 1125 when they were fixed by API in a tangible format. This ownership is reflected in API's registrations for the API marks with the U.S. Patent and Trademark Office pursuant to 15 U.S.C. §§ 1051 and 1052. *See, e.g.,* **<u>Exhibit C</u>** (group exhibit)).

66. API owns all right, title, and interest in the API Marks appearing on the API Standards and has the authority to enforce all such rights in such trademarks.

67. API's trademarks registrations for the API's Standards predate Defendants' infringing activity.

68. As a result of Defendants' unauthorized actions with respect to the API Standards, Defendants' willfully and intentionally engaged in unfair competition with API by fraudulent selling API Standards that bear the API Marks and purport to be official documents provided by official API distributors.

69. By the above-alleged actions, Defendants have infringed and will continue to infringe API's trademarks in and relating to API's Standards by

reproducing, without API's authorization, copies of API's Standards purporting to be provided by authorized distributors, which is likely to cause confusion, mistake, and/or deception, in violation of 15 U.S.C. § 1125.

70. Defendants' actions as described above have been willful and/or knowing at all times relevant to this action.

71. As a direct and proximate result of Defendants' infringement of API's trademarks, API is entitled to disgorgement of Defendants' profits under 15 U.S.C. § 1117(a). Alternatively, at API's election, pursuant to 15 U.S.C. § 1117(a), API shall be entitled to its actual damages or a reasonable royalty from infringement in an amount to be proven at trial. API is also entitled to its costs, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

72. API has no adequate remedy at law. Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to API. As a result of Defendants' wrongful conduct, API is entitled to injunctive relief and damages.

## ATTORNEYS' FEES

73. Pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 505, API is entitled to, and respectfully requests, its reasonable attorneys' fees in this case.

## PRAYER FOR RELIEF

API respectfully prays this Court issue the following relief:

A. An Order holding Defendants liable for willful copyright infringement;

B. An Order holding Defendants liable for willful trademark infringement and unfair competition.

C. An Order directing Defendants to destroy all copies of API's Standards in their possession, custody, or control, whether hard-copy or electronic;

D. An Order permanently enjoining Defendants and all persons and/or entities in active concert or participation with them from copying and/distributing API's Standards in any manner, via any platform, using any technology;

E. An Order requiring Defendants to disclose the number of copies of API's Standards they made and/or distributed in any form, and the identity of each recipient;

F. An Order requiring Defendants to disclose the third-party source, if any, of any unauthorized copies of API's Standards;

G. A permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, representatives, distributors, dealers, and all persons in active concert or participation with any of them, from taking any actions that falsely suggest that Defendants and/or Defendants' businesses, employers, products, or services are sponsored, licensed, or approved by API;

H. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with API or the API Standards.

I. An Order requiring Defendants to account for and pay to the API all profits arising from Defendants' unlawful acts;

J. An Order directing Defendants to pay API damages, including but not limited to direct, consequential, indirect, compensatory, punitive damages, and/or statutory damages, including enhanced statutory damages for willful copyright infringement;

K. An Order awarding API its attorneys' fees and costs in this action pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and other applicable laws;

L. Awarding API interest, including prejudgment and post-judgment interest, on the foregoing sums; and

M. Awarding such other relief as this Court may deem appropriate.

Dated: November 16, 2026

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By *__/s/G. Warren Bleeker__*
G. Warren Bleeker

*Attorneys for Plaintiff American Petroleum Institute*

**DEMAND FOR JURY TRIAL**

Plaintiff American Petroleum Institute demands a jury trial of all issues in this action so triable.

Dated: November 16, 2026

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By *_/s/G. Warren Bleeker_*
G. Warren Bleeker

*Attorneys for Plaintiff*
*American Petroleum Institute*